IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARLON KERR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: |
| ) | |
| UNIFIED GOVERNMENT OF WYANDOTTE ) | |
| COUNTY/KANSAS CITY, KANSAS ) | |
| ) | |
|    Serve:  Brett Deichler ) | |
|    Unified Government Clerk ) | |
|    710 N. 7th Street, Suite 323 ) | |
|    Kansas City, KS 66101 ) | |
| ) | |
| AND ) | |
| ) | |
| KANSAS CITY BOARD OF PUBLIC UTILITIES ) | |
| ) | |
|    Serve:  Brett Deichler ) | |
|    Unified Government Clerk ) | |
|    710 N. 7th Street, Suite 323 ) | |
|    Kansas City, KS 66101 ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT WITH JURY DEMAND**

COMES NOW Plaintiff Marlon Kerr, and for his causes of action against Defendants Unified Government of Wyandotte County/Kansas City, Kansas and Kansas City Board of Public Utilities, alleges and states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Marlon Kerr, (hereinafter "Plaintiff" or "Kerr") is a black individual who at all relevant times was, and currently is, a resident of Kansas City, Kansas, and is employed by Kansas City Board of Public Utilities in Kansas City, Kansas.

2. Defendant Unified Government of Wyandotte County/Kansas City, Kansas (hereinafter "Defendant Unified Government") is a Kansas governmental entity. The Unified

Government acts as a Representative of Kansas City Board of Public Utilities (hereinafter "Defendant BPU").

3. Defendant BPU is a public utility, and an administrative agency of the Defendant Unified Government, which provides electricity to approximately 63,000 customers and water to approximately 50,000 customers in Wyandotte County and Johnson County, Kansas. Defendant BPU regularly conducts business in the state of Kansas and may be served by serving the Unified Government Clerk, Brett Deichler, at 710 N. 7th Street, Suite 323, Kansas City, Kansas 66101.

4. At all times relevant hereto, Plaintiff was an employee of Defendant BPU, as that term is defined in 42 U.S.C. §2000e(f), and 29 U.S.C. §630(f) (The Age Discrimination in Employment Act (hereafter "ADEA")).

5. At all times relevant hereto, Defendant Unified Government has engaged in interstate commerce, done business in the State of Kansas and has been an employer as that term is defined in 42 U.S.C. §2000e(b), and 29 U.S.C. §630(b).

6. Defendant Unified Government employs (and at all times relevant has employed) more than 500 employees.

7. At all times mentioned herein, all of Defendants' employees were acting within the scope of their employment with Defendants in furtherance of its business.

8. Jurisdiction is proper in this Court, because federal questions are involved, pursuant to 28 U.S.C. §1331. This Court has original subject matter jurisdiction over all of Plaintiff's federal causes of action under 42 U.S.C. §2000e *et seq* and 29 U.S.C. §216(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) in that the employment practices alleged to be unlawful and all other transactions and occurrences alleged herein were committed within the judicial district of the United States District Court for the District

of Kansas, and Defendant Unified Government is a municipality located in this district.

## CONDITIONS PRECEDENT – ADMINISTRATIVE EXHAUSTION

10. Plaintiff filed his initial Charge of Discrimination with the EEOC on June 10, 2020, alleging race discrimination, hostile work environment and retaliation. A copy of the charge is attached as Exhibit "A" and incorporated herein by reference.

11. On March 19, 2021, Plaintiff amended his Charge of Discrimination, alleging a continuation of race discrimination, harassment and retaliation. A copy of the charge is attached as Exhibit "B" and incorporated herein by reference.

12. On June 14, 2021, the EEOC issued to Plaintiff his Notice of Right to Sue, which is attached as Exhibit "C."

13. This action has been timely commenced by the filing of this Complaint within ninety (90) days after Plaintiff's receipt of the Notice of Right to Sue.

## FACTS COMMON TO ALL COUNTS

14. Plaintiff is a black male and is a member of a protected group under Title VII and civil rights laws.

15. Plaintiff began working for Defendant BPU in 2008 as a meter reader. In 2014, Kerr was promoted to the position of Field Representative 1, and he is currently a Field Representative 2.

16. On March 26, 2020, one of Plaintiff's white co-workers, Aaron Brickey, told him to "get your black ass to work." Plaintiff responded that he did not appreciate his comment.

17. Then on March 31, 2020, Brickey called Plaintiff on his cell phone and asked about another co-worker's work at a customer's address. During that phone conversation., Brickey stated "I see your truck over there, n*gger." This was very offensive to Plaintiff and he

immediately reported this racist comment to his supervisor, Karla Kasper, who is a white female.

18. Plaintiff then met with Kasper in her office on April 1, 2020 and told her that if he had made comments like that, he would have been fired on the spot. Plaintiff also reported that he had heard Brickey say to a black co-worker in the break room that "this coffee is as black as you."

19. Kasper, Plaintiff's supervisor, forced him to have a meeting with Brickey the next day, during which Plaintiff was further threatened and intimidated by Brickey when he said he was a black belt in karate and that Plaintiff should be glad he did not know him outside of work. During this meeting, Brickey admitted to the racial remarks he made. Plaintiff told Kasper he did not want to work with Brickey. Plaintiff was informed by Kasper that HR would be in touch with him.

20. Plaintiff has had to work with Brickey consistently since this time, which has created a hostile work environment.

21. On April 29, 2020, Plaintiff contacted Human Resources, and learned from HR manager Ashley Culp that no one had reported Aaron Brickey's comments or conduct to HR, contrary to policy. Plaintiff made the report of race discrimination and harassment to HR that day.

22. On April 30, 2020, Plaintiff discovered a rope tied to the chair he consistently sat in the break room every day since he started working in the field rep department. This rope was threatening to him.

23. On May 4, 2020, Plaintiff spoke with an HR investigator with respect to his complaint. Shortly after that meeting, Plaintiff's supervisor called him into her office and accused him of being absent from work. Plaintiff told her he was with HR.

24. On May 8, 2020, Plaintiff was falsely accused of flooding a customer's basement on April 21 by his supervisor. He received a "Conduct Memorandum" for this allegation.

25. Plaintiff made a report of retaliation to HR on May 12, 2020, and sent a picture of the rope on the chair and the Conduct Memorandum the next day.

26. The rope remained on the chair in the break room until May 29, 2020, and was not removed until Plaintiff made a second report to HR about the rope.

27. After Plaintiff filed his Charge of Discrimination with the EEOC on June 10, 2020, he was subjected to continuing harassment and retaliatory harassment. Plaintiff's supervisors assigned Brickey as the back-up worker in his work area which created an intimidating and hostile work environment.

28. On June 16 or 17, 2020, Plaintiff was in the break room and Brickey was looking at him in an intimidating manner while he was sharpening a personal knife at work. He reported this to HR Compliance Coordinator Tammy Torrez.

29. Plaintiff did not feel safe at work and decided to reach out to a BPU Board member, Bob Milan, with his concerns. Then on June 25, 2020, he was called into a meeting with his supervisor, human resources and a union rep, and was instructed that "what goes on here, stays here." The meeting was tape recorded by HR. Plaintiff felt like he was being disciplined for reaching out to the Board member.

30. The stress Plaintiff was experiencing at work led to his hospitalization which required him to take leave from work. He then contracted COVID and was not released to return to work until late September 2020 with a four-hour per day restriction.

31. When he returned to work, he was assigned to follow-up on work that Brickey was supposed to have done, which created hostility toward him at work.

32. On October 2, 2020, Plaintiff was hospitalized again due to the stress at work.

33. When he was able to return to work part time on November 4, 2020, Plaintiff's supervisor failed to accommodate him at first and did not approve his leave. She then assigned Plaintiff to work in the same area as Brickey.

34. Despite the COVID rules, Plaintiff was ordered into a building to work and threatened with insubordination if he did not comply.

35. On December 3, 2020, when Plaintiff was able to return to work without restrictions, his supervisor sent him home and did not allow him to work a full day.

36. In January 2021, when Plaintiff came to work, some union rep boots were found hanging from the ceiling in the breakroom. When Plaintiff objected to this as offensive and intimidating, the supervisors just laughed.

37. Defendant BPU then promoted Brickey to the safety coordinator position, which requires Plaintiff to report safety issues to him.

38. In January 2021, Plaintiff had his safety day taken away.

39. On January 27, 2021, Plaintiff was written up for allegedly "failing to investigate and locate electric meter and service." He was placed on probation for 90 days for not putting a notice on a vacant house that was boarded up, even though his union representative stated he had just done his job.

40. On February 16, 2021, during another meeting with the supervisors, HR and the union, Plaintiff was accused of not doing his job and creating an unsafe work environment.

41. Since Plaintiff's first complaint about Brickey's racist remarks to him, he has been subjected to continuing discrimination and harassment because of his race, and has

been subjected to continuing retaliation and retaliatory harassment for reporting the racial discrimination and harassment.

42. Plaintiff has been subjected to disparate treatment in that he has been given directives that others do not receive and his supervisors monitor his daily activity unlike his white co-workers.

## COUNT I
## RACE DISCRIMINATION/HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C.§1981 and 42 U.S.C. §2000e-2

43. Plaintiff incorporates by reference all previously stated allegations above, including the entire contents of his Charge filed with the EEOC, as if fully set forth herein.

44. During the course of Plaintiff's employment, Defendants' representatives, acting within the scope and course of employment, engaged in a pattern and practice of racial discrimination and harassment against Plaintiff.

45. The continuing series of events carried out by Defendant Unified Government and Defendant BPU, as described above, are abusive, discriminatory and harassing.

46. As stated above, during Plaintiff's employment with Defendant, Defendant denied Plaintiff equal rights and benefits as enjoyed by white employees.

47. The Defendants' racial discrimination and harassment had the purpose and effect of unreasonably interfering with Plaintiff's work environment.

48. The Defendants' racial discrimination and harassment created an intimidating, hostile and offensive working environment.

49. The conduct as described herein would offend a reasonable person of the same race in Plaintiff's position.

50. Management level employees knew, or should have known, of the racial

discrimination and harassment described herein, but failed to take appropriate remedial action.

51. By failing to conduct prompt, thorough and honest investigations of Plaintiff's allegations and of other witnesses, Defendants exacerbated the racially hostile environment and discrimination in Plaintiff's work place.

52. Because of its actions, Defendants deliberately rendered Plaintiff's working conditions intolerable.

53. The Defendants' conduct constituted disparate treatment in that Plaintiff was treated differently than non-minority employees in the terms and conditions of his employment and his race was a factor.

54. Defendant's misconduct, as alleged above, constitutes racial discrimination and retaliation in violation of 42 U.S.C. § 1981 and 42 U.S.C. §2000e-2.

55. As a result of the discriminatory conduct of Defendants, Plaintiff has suffered and will continue to suffer economic damages, including lost income, and non-economic damages, including mental anguish, emotional distress, embarrassment, humiliation and loss of enjoyment of life.

56. The actions of Defendant Unified Government, Defendant BPU, and its employees have been willful, and in reckless disregard for the rights of Plaintiff. As a result, Plaintiff is entitled to actual and punitive damages.

57. Plaintiff is entitled to all actual damages, and to punitive damages, in such amounts as will be proven at trial and found to be reasonable by a jury.

58. If Plaintiff prevails on his claim, he is entitled to recover all attorneys' fees, costs, and expenses as provided by law.

WHEREFORE, Plaintiff prays for judgment against Defendants, for a finding that he has

been subjected to unlawful racial harassment and discrimination; for an award of all actual damages deemed fair and reasonable by the jury; for punitive damages in such amount as is deemed fair and reasonable by the jury; for all attorneys' fees, costs and expenses incurred by Plaintiff; and for such other equitable relief as the court deems just and proper.

## COUNT II
### RETALIATION IN VIOLATION OF 42 U.S.C.§1981 and 42 U.S.C. §2000e-3

59. Plaintiff incorporates by reference all previously stated allegations above, including the entire contents of his Charge filed with the EEOC, as if fully set forth herein.

60. Plaintiff's internal complaints concerning the racial discrimination and harassment he was subjected to constituted protected activity.

61. Plaintiff engaged in protected activity by making a complaint of race discrimination with the EEOC.

62. After Plaintiff complained about unlawful discrimination and harassment, and as a result of his complaints, Defendants retaliated against Plaintiff by subjecting him to increased scrutiny, disciplinary action and unfavorable modifications to his work requirements, among other adverse actions as detailed above.

63. As a result of the unlawful retaliation to which he was subjected, Plaintiff has suffered and will continue to suffer economic damages, including lost income, and non-economic damages, including mental anguish, emotional distress, embarrassment, humiliation and loss of enjoyment of life.

64. The actions of Defendant Unified Government, Defendant BPU, and its employees have been willful, and in reckless disregard for the rights of Plaintiff. As a result, Plaintiff is entitled to actual and punitive damages.

65. Plaintiff is entitled to all actual damages, and to punitive damages, in such amounts

as will be proven at trial and found to be reasonable by a jury.

66. If Plaintiff prevails on his claim, he is entitled to recover all attorneys' fees, costs, and expenses as provided by law.

WHEREFORE, Plaintiff prays for judgment against Defendants, for a finding that he has been subjected to unlawful racial harassment and discrimination; for an award of all actual damages deemed fair and reasonable by the jury; for punitive damages in such amount as is deemed fair and reasonable by the jury; for all attorneys' fees, costs and expenses incurred by Plaintiff; and for such other equitable relief as the court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial on all issues so triable in this action.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place for trial.

Respectfully Submitted,

BROWN & CURRY, LLC

/s/ Sarah A. Brown
Sarah A. Brown, KS#12130
Daniel G. Curry, KS #22750
1600 Genessee Street, Suite 956
Kansas City, MO 64102
(816) 756-5458
(816) 666-9596 (Fax)
sarah@brownandcurry.com
dan@brownandcurry.com

ATTORNEYS FOR PLAINTIFF